Freddie HAMILTON, Administratrix, et al., Plaintiffs,

v.

ACCU–TEK, et al., Defendants.

In re COURTROOM TELEVISION NETWORK, Applicant/Proposed Intervenor.

No. 95 CV 0049 (JBW).

United States District Court, E.D. New York.

Oct. 18, 1996.

---

Elisa Barnes, New York City, for Plaintiffs.

John F. Renzulli, Renzulli, Gainey & Rutherford, New York City, for Defendants.

Robert L. Joyce, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for Defendants Accu-tek, A.M.T., Browning Arms Co., Caspian Arms Co., Davis Industries, Inc., European American Armory, Freedom Arms Co., Glock Inc., H & R 1871 Corp., International Armament, K.B.I. Corp., Mitchell Arms Inc., Navegar Inc., Para Ordnance Mfg. Inc., Savage Arms Corp., Thompson/Center Arms Co.

Daniel T. Hughes, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, New York City, for Defendant American Arms Inc.

Timothy A. Bumann, Christopher J. York, Cozen and O'Connor, Atlanta, GA, for Defendants American Derringer, Bryco Arms, Calico Inc., Excam Inc., Firearms Import and Export Corp., Jennings Firearms Inc., Lorcin Engineering Co., Phoenix Arms Co., S.W.

Daniels Inc., Taurus International Firearms Inc.

Michael J. Sommi, Cozen and O'Connor, New York City, for Defendants A.M.T., Bryco Arms, Calico Inc., Excam Inc., Lorcin Engineering Co., Taurus International Firearms Inc., Thompson Center Arms.

Patricia Fried Moores, Pino & Associates, White Plains, NY, for Defendants Beretta Firearms, Beretta U.S.A. Corp.

Peter James Johnson, Jr., Leahey & Johnson, P.C., New York City, for Defendant Century International Arms Inc.

Timothy Atwood, Ansonia, CT, for Defendant Charco.

Anne Giddings Kimball, Wildman, Harrold, Allen, Dixon & Smith, Chicago, IL, for Defendants Colt Industries Operating Corp., Colt's Mfg. Co., Inc., Marlin Firearms Inc., Remington Arms Co., Seecamp, Smith and Wesson Inc., Sturm, Ruger and Co., Inc.

Steven Jay Harfenist, Carroll & Harfenist, New York City, for Defendant S.W. Daniels, Inc..

Floyd Abrams, Jonathan Sherman, Cahill Gordon & Reindel, New York City, for the Intervenor.

### AMENDED MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge:

Courtroom Television Network ("Court TV") moved to intervene and for permission to broadcast the argument of pending motions. No objection was made by any party.

■ General Rule Seven of the Eastern District of New York permits an individual judge to decide if part or all of a case should be recorded for television broadcast, and what the conditions of that recording should be. Entitled "Photographs, Radio, Recordings, Television," it reads in part:

> No one other than court officials engaged in the conduct of court business shall bring any camera, transmitter, receiver, portable telephone or recording device into any courthouse or its environs without written permission of a judge of that court.

Decisions interpreting the rule affirm the authority of each judge to permit with conditions, or to deny, television recording or broadcasting from the courtroom over which she or he presides. *See Katzman v. Victoria's Secret Catalogue,* 923 F.Supp. 580 (S.D.N.Y.1996) (Sweet, J.) (permitting civil proceedings to be televised under the authority of identical local court rule, S.D.N.Y.Gen.R. 7); *Marisol A. v. Giuliani,* 929 F.Supp. 660 (S.D.N.Y.1996) (Ward, J.) (same; extensive description of history and authority under Gen.R. 7 and of desirability of continuing current discretion of trial judges).

The present reluctance of the United States Judicial Conference to utilize television in civil cases is clear. In September 1994 the Conference "declined to approve" a recommendation favorable to television after a national study. In March 1996 the Conference suggested that judicial councils of the circuits abrogate local rules that permit televising in civil cases. *Katzman v. Victoria's Secret Catalogue,* 923 F.Supp. 580, 584.

The Judicial Council of the Second Circuit has not followed the Conference suggestion. It has taken no action, leaving Rule Seven operative.

■ A district judge is not bound by Conference suggestions, although, of course, it gives them great weight since they reflect much of the wisdom and experience of the federal judiciary. *See* 28 U.S.C. §§ 331 ("suggestions and recommendations to the various courts to promote uniformity of management procedures and the expeditious conduct of court business"), 2071(c) (rule-making power generally; "A rule of a district court . . . shall remain in effect unless modified or abrogated by the judicial council of the relevant circuit"); *Marisol A. v. Giuliani,* 929 F.Supp. 660, 661 (policy of the Conference does not overrule or supplant Local Rules); *Katzman v. Victoria's Secret Catalogue,* 923 F.Supp. 580, 584 (same).

■ No reason has been suggested to depart from previously expressed views that, in general, the public should be permitted and encouraged to observe the operation of its courts in the most convenient manner possi-

**138**

ble, so long as there is no interference with the due process, the dignity of litigants, jurors and witnesses, or with other appropriate aspects of the administration of justice. *See* Diane L. Zimmerman et al., *Let the People Observe Their Courts,* 61 Judicature 156 (1977); N.Y.L.J., March 31 & April 1, 1977, at 1; Morton Mintz, *High Court Taping Urged, Federal Judge Advocates Public's Right to Know,* Wash. Post, November 18, 1977, at A2.

In his article, *Milton's Areopagitica and the Modern First Amendment,* Columbia Law School Bulletin 35 (Fall 1996), Professor Vincent A. Blasi referred to the English Parliament's regulation of pamphlet printing in the mid–17th century, because this revolutionary new medium of communication might be used to embolden the masses. The Parliament's action, he suggested, may be analogized to controlling access of the eye and ear of television to public institutions: "Never before ... have the technologies of mass communication made the susceptibilities of audiences so dangerous." *Id.* at 40. See also Justice Brandeis, the strong supporter of letting the sunshine in: "The greatest menace to freedom is an inert people." *Whitney v. California,* 274 U.S. 357, 375–76, 47 S.Ct. 641, 648, 71 L.Ed. 1095 (1926) (Brandeis, J., concurring).

In our democracy, the knowledgeable tend to be more robustly engaged in public issues. Information received by direct observation is often more useful than that strained through the media. Actually seeing and hearing court proceedings, combined with commentary of informed members of the press and academia, provides a powerful device for monitoring the courts.

Court TV's applications to intervene and to broadcast argument of the pending motions are granted.

SO ORDERED.