**Julius H. SCHOEPS, Edelgard Von Lavergne–Peguilhen, and Florence Kesselstatt, Plaintiffs,**

v.

**The MUSEUM OF MODERN ART and The Solomon R. Guggenheim Foundation, Defendants.**

**No. 07 Civ. 11074 (JSR).**

United States District Court, S.D. New York.

March 2, 2009.

Evan Davis, Esq., Cleary Gottlieb Steen & Hamilton, LLP, Gregory Joseph, Esq., Gregory P. Joseph Law Office LLC, New York, NY, for the Museum of Modern Art and the Solomon R. Guggenheim Foundation.

John J. Byrne, Esq., Byrne, Goldenberg & Hamilton PLLC, Washington, D.C., David G. Smitham, Esq., Bressler, Amery & Ross, P.C., New York, NY, for Julius Schoeps et al.

Jonathan Sherman, Esq., Boies, Schiller & Flexner LLP, Washington, DC, for Courtroom View Network.

## MEMORANDUM

JED S. RAKOFF, District Judge.

In late December, Courtroom View Network ("CVN") applied to the Court for permission to record and provide audio-visual coverage of the trial in this case, which was scheduled to begin on February 2, 2009. The Court requested and received submissions from the parties stating their positions on the issue of whether to grant this permission. Plaintiffs consented, but defendants opposed. By Order dated January 27, 2009, 594 F.Supp.2d 461, the Court denied CVN's request. As it happened, on the morning of February 2, 2009, the parties announced in open court that they had settled the case, see transcript 2/9/09, so the trial CVN had asked to cover never took place. The Court nevertheless writes, as promised in the January 27, 2009 Order, to set forth the reasons underlying its decision to deny CVN's request.

CVN provides its subscribers with audio-visual coverage of court proceedings (sometimes live, sometimes recorded), which it obtains by operating a single, relatively unobtrusive camera in the courtroom. Although the Judicial Conference of the United States has generally disfavored cameras in the courtroom, *see Katzman v. Victoria's Secret Catalogue*, 923 F.Supp. 580, 584 (S.D.N.Y.1996) (summarizing the 1994 and 1996 resolutions of the Judicial Conference), under SDNY Local Civil Rule 1.8 a district court judge in this judicial district has discretion to permit or deny recording devices in the courtroom. Local Rules of the U.S. Dist. Cts. for the Southern and Eastern Dists. of N.Y. 1.8; *see Marisol A. v. Giuliani*, 929 F.Supp. 660, 661 (S.D.N.Y.1996). While the judges of the Southern District of New York are far from unanimous on whether to permit such recording, in recent years several district judges of this Court have, pursuant to Rule 1.8, allowed CVN to provide coverage of various proceedings. *See, e.g., E*Trade v. Deutsche Bank*, 582 F.Supp.2d 528 (S.D.N.Y.2008); *Scotchtown Holdings LLC v. Town of Goshen*, No. 08 Civ. 4720, 2009 WL 27445 (S.D.N.Y. Dec. 11, 2008).

The undersigned is among those who have granted CVN permission to do so, *see, e.g., CCM Pathfinder Pompano Bay, LLC v. Compass Financial Partners LLC., et al.*, No. 08 Civ. 5258 (S.D.N.Y. Aug. 6, 2008), in the belief that, in general, audio-visual coverage of court proceedings that do not involve a jury should be freely allowed. This country has a long tradition of making court proceedings and documents open to the public, *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), and the news media have come to play an important role in facilitating this

access, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577 n. 12, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Audio-visual coverage is simply another way in which the public can keep abreast of public proceedings in the courthouse.

To the slight extent that the Judicial Conference has articulated the reasons for its opposition to cameras in the courtroom, it has focused on the potential impact on witnesses and jurors. *See* Report of the Proceedings of the Judicial Conference of the United States, Sept. 20, 1994, at 47, *available at* http://www.uscourts.gov/judconfindex.html ("Based upon the data presented, a majority of the Conference concluded that the intimidating effect of cameras on some witnesses and jurors was cause for concern...."). This Court is not convinced that any impact on witnesses is likely in most cases; but telecasting a jury trial presents more substantial issues. Indeed, it appears that on only one occasion has the televising of a jury trial been approved in this judicial district, and that was over a decade ago and on consent of all parties. *See Sigmon v. Parker Chapin Flattau & Klimpl*, 937 F.Supp. 335, 337 (S.D.N.Y.1996).

On the one hand, the Court does not accept defendants' speculation that broadcasting, as opposed to more conventional media coverage, increases the likelihood that jurors will be exposed, via friends and family who viewed the broadcast, to information concerning parts of the proceeding that took place outside of their presence. Nor, in any event, is there any reason to believe that the standard instruction forbidding the jury to discuss the case outside the courtroom or to consult media reports would not be an adequate safeguard. *Cf. United States v. Salerno*, 868 F.2d 524, 540 (2d Cir.1989) (holding that the failure to sequester a jury in a highly publicized case is not grounds for reversal when the dis-

trict court judge instructed the jury not to read or view media coverage of the trial).

On the other hand, broadcasting does raise the spectre of potential interference with jurors' own sense of privacy and anonymity, which is so central to their ability to be scrupulously impartial. Would it be necessary, for example, to question potential jurors on *voir dire* as to whether they have any objection to, or would be affected by, the presence of a camera that might focus on them? If a potential juror were excused because of objection to such broadcasting, would that deprive a party of a full and proper venire? And even if no objection were raised by a given juror, would the knowledge that he or she was being televised compromise his or her impartiality?

It might be possible to minimize these risks by conditioning the televising of a trial on the requirement that the camera would never be focused on the jury. But the Court has already experienced, in the prior proceedings it has allowed to be televised, the danger that cameramen and other technical personnel are not always attentive to the restrictions agreed to by counsel and the Court. The Court nevertheless remains open to the possibility of broadcasting a jury trial in the future. In the instant case, however, involving very sensitive issues concerning allegations of Nazi coercion and "looted art," the potential risks to jury impartiality were, in the Court's view, sufficient to deny broadcasting in this case.