*184 Per Curiam.
We are asked to stay the broadcast of a federal trial. We resolve that question without expressing any view on whether such trials should be broadcast. We instead determine that the broadcast in this case should be stayed because it appears the courts below did not follow the appropriate procedures set forth in federal law before changing their rules to allow such broadcasting. Courts enforce the requirement of procedural regularity on others, and must follow those requirements themselves.
* * *
This lawsuit, still in a preliminary stage, involves an action challenging what the parties refer to as Proposition 8, a California ballot proposition adopted by the electorate. Proposition 8 amended the State Constitution by adding a new section providing that “[o]nly marriage between a man and a woman is valid or recognized in California.” Cal. Const. Art. I, § 7.5. The plaintiffs contend that Proposition 8 violates the United States Constitution. A bench trial in the case began on Monday, January 11, 2010, in the United States District Court for the Northern District of California.
The District Court has issued an order permitting the trial to be broadcast live via streaming audio and video to a number of federal courthouses around the country. The order was issued pursuant to a purported amendment to a local Rule of the District Court. That Rule had previously forbidden the broadcasting of trials outside the courthouse in which a trial takes place. The District Court effected its amendment via several postings on the District Court’s Web site in the days immediately before the trial in this case was to begin.
Applicants here are defendant-intervenors in the lawsuit. They object to the District Court’s order, arguing that the District Court violated a federal statute by promulgating the amendment to its local Rule without sufficient opportunity *185 for notice and comment and that the public broadcast would violate their due process rights to a fair and impartial trial. Applicants seek a stay of the order pending the filing of petitions for writs of certiorari and mandamus. We granted a temporary stay to consider the issue further. Post, p. 1107. Concluding that applicants have made a sufficient showing of entitlement to relief, we now grant a stay.
I
Proposition 8 was passed by California voters in November 2008. It was a ballot proposition designed to overturn a ruling by the California Supreme Court that had given same-sex couples a right to marry. Proposition 8 was and is the subject of public debate throughout the State and, indeed, nationwide. Its advocates claim that they have been subject to harassment as a result of public disclosure of their support. See, e. g., Reply Brief for Appellant in Citizens United v. Federal Election Comm’n, No. 08-205, pp. 28-29, now pending before this Court. [Reporter’s Note: see post, p. 310.] For example, donors to groups supporting Proposition 8 “have received death threats and envelopes containing a powdery white substance.” Stone, Prop 8 Donor Web Site Shows Disclosure Is 2-Edged Sword, N. Y. Times, Feb. 8, 2009. Some advocates claim that they have received confrontational phone calls and e-mail messages from opponents of Proposition 8, ibid., and others have been forced to resign their jobs after it became public that they had donated to groups supporting the amendment, see Brief for Center for Competitive Politics as Amicus Curiae in Citizens United, supra, pp. 13-14. Opponents of Proposition 8 also are alleged to have compiled “Internet blacklists” of pro-Proposition 8 businesses and urged others to boycott those businesses in retaliation for supporting the ballot measure. Carlton, Gay Activists Boycott Backers of Prop 8, Wall Street Journal, Dec. 27, 2008, p. A3. And numerous instances of vandalism and physical violence have been reported against those who *186 have been identified as Proposition 8 supporters. See Exhs. B, I, and L to Defendant-intervenors’ Motion for Protective Order in Perry v. Schwarzenegger, No. 3:09-cv-02292 (ND Cal.) (hereinafter Defendant-Intervenors’ Motion).
Respondents filed suit in the United States District Court for the Northern District of California, seeking to invalidate Proposition 8. They contend that the amendment to the State’s Constitution violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution. The State of California declined to defend Proposition 8, and the defendant-intervenors (who are the applicants here) entered the suit to defend its constitutionality. A bench trial began on Monday, January 11, 2010, before the Chief Judge of the District Court, the Honorable Vaughn R. Walker.
On September 25, 2009, the District Court informed the parties at a hearing that there was interest in the possibility that the trial would be broadcast. Respondents indicated their support for the idea, while applicants opposed it. The court noted that “[tjhere are, of course, Judicial Conference positions on this,” but also that “[t]his is all in flux.” Exh. 9, p. 72, App. to Pet. for Mandamus in No. 10-70063 (CA9) (hereinafter App. to Pet.).
One month later, Chief Judge Kozinski of the United States Court of Appeals for the Ninth Circuit appointed a three-judge committee to evaluate the possibility of adopting a Ninth Circuit Rule regarding the recording and transmission of district court proceedings. The committee (of which Chief Judge Walker was a member) recommended to the Ninth Circuit Judicial Council that district courts be permitted to experiment with broadcasting court proceedings on a trial basis. Chief Judge Walker later acknowledged that while the committee was considering the pilot program, “this case was very much in mind at that time because it had come to prominence then and was thought to be an ideal candidate for consideration.” Id., Exh. 2, at 43. The committee did *187 not publicly disclose its consideration of the proposal, nor did it solicit or receive public comments on the proposal.
On December 17, the Ninth Circuit Judicial Council issued a news release indicating that it had approved a pilot program for “the limited use of cameras in federal district courts within the circuit.” Id., Exh. 13, at 1. The release explained that the Council’s decision “amend[ed] a 1996 Ninth Circuit policy” that had banned the photographing, as well as radio and television coverage, of court proceedings. Ibid. The release further indicated that cases would be selected for participation in the program “by the chief judge of the district court in consultation with the chief circuit judge.” Ibid. No further guidelines for participation in the pilot program have since been issued.
On December 21, a coalition of media companies requested permission from the District Court to televise the trial challenging Proposition 8. Two days later, the court indicated on its Web site that it had amended Civil Local Rule 77-3, which had previously banned the recording or broadcast of court proceedings. The revised version of Rule 77-3 created an exception to this general prohibition to allow “for participation in a pilot or other project authorized by the Judicial Council of the Ninth Circuit.” Id., Exh. 14. Applicants objected to the revision, arguing that any change to Ninth Circuit or local rules would require a sufficient notice- and-comment period.
On December 31, the District Court revised its Web site to remove the previous announcement about the change to Rule 77-3. A new announcement was posted indicating a “proposed revision of Civil Local Rule 77-3,” which had been “approved for public comment.” Id., Exh. 17. The proposed revision was the same as the previously announced amendment. Comments on the proposed revision were to be submitted by Friday, January 8, 2010.
On January 4, 2010, the District Court again revised its Web site. The announcement regarding the proposed *188 revision of Rule 77-3 was removed and replaced with a third version of the announcement. This third version stated that the revised Rule was “effective December 22, 2009,” and that “[t]he revised rule was adopted pursuant to the ‘immediate need’ provision of Title 28 Sec. 2071(e).” Id., Exh. 19, at 3.
On January 6, 2010, the District Court held a hearing regarding the recording and broadcasting of the upcoming trial. The court announced that an audio and video feed of trial proceedings would be streamed live to certain courthouses in other cities. It also announced that, pending approval of the Chief Judge of the Ninth Circuit, the trial would be recorded and then broadcast on the Internet. A court technician explained that the proceedings would be recorded by three cameras, and then the resulting broadcast would be uploaded for posting on the Internet, with a delay due to processing requirements.
On January 7, 2010, the District Court filed an order formally requesting that Chief Judge Kozinski approve “inclusion of the trial in the pilot project on the terms and conditions discussed at the January 6, 2010 hearing and subject to resolution of certain technical issues.” Id., Exh. 1, at 2. Applicants filed a petition for a -writ of mandamus in the Court of Appeals, seeking to prohibit or stay the District Court from enforcing its order. The following day, a three-judge panel of the Court of Appeals denied the petition.
On January 8, 2010, Chief Judge Kozinski issued an order approving the District Court’s decision to allow real-time streaming of the trial to certain federal courthouses listed in a simultaneously issued press release. Five locations had been selected: federal courthouses in San Francisco, Pasadena, Seattle, Portland, and Brooklyn. The press release also indicated that “[ajdditional sites may be announced.” Federal Courthouses To Offer Remote Viewing of Proposition 8 Trial, online at http://www.ca9.uscourts.gov/datastore/ general/2010/01/08/Prop8_Remote_Viewing_Locations.pdf *189 (as visited Jan. 13, 2010, and available in Clerk of Court’s ease file).
Chief Judge Kozinski’s January 8 order noted that the request to broadcast the trial on the Internet was “still pending” before him. In a later letter to Chief Judge Walker, he explained that the request was not yet “ripe for approval” because “the technical staff encountered some unexpected difficulties preparing a satisfactory video suitable for on-line posting.” Letter of Jan. 9, 2010 (available in Clerk of Court’s case file). A final decision whether to permit online publication would be made when technical difficulties were resolved.
On January 9,2010, applicants filed in this Court an application for a stay of the District Court’s order. Their petition seeks a stay pending resolution of forthcoming petitions for the writs of certiorari and mandamus.
II
The question whether courtroom proceedings should be broadcast has prompted considerable national debate. Reasonable minds differ on the proper resolution of that debate and on the restrictions, circumstances, and procedures under which such broadcasts should occur. We do not here express any views on the propriety of broadcasting court proceedings generally.
Instead, our review is confined to a narrow legal issue: whether the District Court’s amendment of its local rules to broadcast this trial complied with federal law. We conclude that it likely did not and that applicants have demonstrated that irreparable harm would likely result from the District Court’s actions. We therefore stay the court’s January 7, 2010, order to the extent that it permits the live streaming of court proceedings to other federal courthouses. We do not address other aspects of that order, such as those related to the broadcast of court proceedings on the Internet, as this may be premature.
*190 A
To obtain a stay pending the filing and disposition of a petition for a writ of certiorari, an applicant must show (1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay. In close cases the Circuit Justice or the Court will balance the equities and weigh the relative harms to the applicant and to the respondent. Lucas v. Townsend, 486 U. S. 1301, 1304 (1988) (Kennedy, J., in chambers); Rostker v. Goldberg, 448 U. S. 1306, 1308 (1980) (Brennan, J., in chambers). To obtain a stay pending the filing and disposition of a petition for a writ of mandamus, an applicant must show a fair prospect that a majority of the Court will vote to grant mandamus and a likelihood that irreparable harm will result from the denial of a stay. Before a writ of mandamus may issue, a party must establish that (1) “no other adequate means [exist] to attain the relief he desires,” (2) the party’s “right to issuance of the writ is ‘clear and indisputable,’ ” and (3) “the writ is appropriate under the circumstances.” Cheney v. United States Dist. Court for D. C., 542 U. S. 367, 380-381 (2004) (some internal quotation marks omitted). This Court will issue the writ of mandamus directly to a federal district court “only where a question of public importance is involved, or where the question is of such a nature that it is peculiarly appropriate that such action by this court should be taken.” Ex parte United States, 287 U. S. 241, 248-249 (1932). These familiar standards are followed here, where applicants claim that the District Court’s order was based on a local Rule adopted in violation of federal law.
B
Given the importance of the issues at stake, and our conclusion that the District Court likely violated a federal stat *191 ute in revising its local rules, applicants have shown a fair prospect that a majority of this Court will either grant a petition for a writ of certiorari and reverse the order below or will grant a petition for a writ of mandamus.
A district court has discretion to adopt local rules. Frazier v. Heebe, 482 U. S. 641, 645 (1987) (citing 28 U. S. C. §2071; Fed. Rule Civ. Proc. 83). Those rules have “the force of law.” Weil v. Neary, 278 U. S. 160, 169 (1929). Federal law, however, requires a district court to follow certain procedures to adopt or amend a local rule. Local rules typically may not be amended unless the district court “giv[es] appropriate public notice and an opportunity for comment.” 28 U. S. C. § 2071(b); see also Fed. Rule Civ. Proc. 83(a). A limited exception permits dispensing with this notice-and-comment requirement only where “there is an immediate need for a rule.” § 2071(e). Even where a rule is amended based on immediate need, however, the issuing court must “promptly thereafter afford . . . notice and opportunity for comment.” Ibid.
Before late December, the court’s Local Rule 77-3 explicitly banned the broadcast of court proceedings:
“Unless allowed by a Judge or a Magistrate Judge with respect to his or her own chambers or assigned courtroom for ceremonial purposes, the taking of photographs, public broadcasting or televising, or recording for those purposes in the courtroom or its environs, in connection with any judicial proceeding, is prohibited. Electronic transmittal of courtroom proceedings and presentation of evidence within the confines of the courthouse is permitted, if authorized by the Judge or Magistrate Judge. The term ‘environs,’ as used in this rule, means all floors on which chambers, courtrooms or on which Offices of the Clerk are located, with the exception of any space specifically designated as a Press Room. Nothing in this rule is intended to restrict the *192 use of electronic means to receive or present evidence during Court proceedings.”
Notably, the Rule excepted from its general ban the transmittal of certain proceedings — but it limited that exception to transmissions “within the confines of the courthouse.” The negative inference of this exception, of course, is that the Rule would have prohibited the streaming of transmissions, or other broadcasting or televising, beyond “the confines of the courthouse.”
Respondents do not dispute that this version of Rule 77-3 would have prohibited streaming video of the trial around the country. But they assert that this is not the operative version of Rule 77-3. In a series of postings on its Web site, the District Court purported to revise or propose revisions to Local Rule 77-3. This amendment would have created an additional exception to Rule 77-3’s general ban on the broadcasting of court proceedings “for participation in a pilot or other project authorized by the Judicial Council of the Ninth Circuit.” Exh. 14, App. to Pet. Respondents rely on this amended version of the Rule.
The amended version of Rule 77-3 appears to be invalid. In amending this rule, it appears that the District Court failed to “giv[e] appropriate public notice and an opportunity for comment,” as required by federal law. 28 U. S. C. § 2071(b). The first time the District Court asked for public comments was on the afternoon of New Year’s Eve. The court stated that it would leave the comment period open until January 8. At most, the District Court therefore allowed a comment period spanning five business days. There is substantial merit to the argument that this was not “appropriate” notice and an opportunity for comment. Administrative agencies, for instance, “usually” provide a comment period of “thirty days or more.” Riverbend Farms, Inc. v. Madigan, 958 F. 2d 1479, 1484 (CA9 1992); see Petry v. Block, 737 F. 2d 1193, 1201 (CADC 1984) (“[T]he shortest period in *193 which parties can meaningfully review a proposed rule and file informed responses is thirty days”).
To be sure, the possibility that some aspects of the trial might be broadcast was first raised to the parties by the District Court at an in-court hearing on September 25, some three months before the Rule was changed. The broadcasting, however, was prohibited under both Circuit and local rules at that time. The first public indication that the District Court intended to adopt a rule of general applicability came in its Web site posting on December 23. And even if Chief Judge Walker’s in-court allusion to the possibility that the Proposition 8 trial might be broadcast could be considered as providing notice to the parties in this case — his statement that “[t]his is all in flux” notwithstanding — the disclosure falls far short of the “appropriate public notice and an opportunity for comment” required by § 2071(b). Indeed, there was no proposed policy on which to comment.
The need for a meaningful comment period was particularly acute in this case. Both courts and legislatures have proceeded with appropriate caution in addressing this question. In 1996, the Judicial Conference of the United States adopted a policy opposing the public broadcast of court proceedings. This policy was adopted after a multiyear study of the issue by the Federal Judicial Center which drew on data from six district and two appellate courts, as well as state-court data. In light of the study’s findings, the Judicial Conference concluded that “the intimidating effect of cameras on some witnesses and jurors [is] cause for concern.” Administrative Office of United States Courts, Report of Proceedings of Judicial Conference of the United States 47 (Sept. 20, 1994).
In more than a decade since its adoption the Judicial Conference has continued to adhere to its position on the broadcast of court proceedings. While the policy conclusions of the Judicial Conference may not be binding on the lower courts, they are “at the very least entitled to respectful con *194 sideration.” In re Sony BMG Music Entertainment, 564 P. 3d 1, 6 (CA1 2009). Before abandoning its own policy— one consistent with the Judicial Conference’s longstanding view's — it was incumbent on the District Court to adopt a proposed rule only after notice and an adequate period for public comment.
In dispensing with public notice and comment the District Court invoked the “immediate need” exception. 28 U. S. C. § 2071(e). It did so through a Web site posting on January 4 — prior to the expiration of the comment period — indicating that Rule 77-3 had been revised to permit participation in the Ninth Circuit’s pilot program. These postings gave no explanation for invoking the exception. At trial the District Court explained that the immediate need here was to allow this case to be broadcast pursuant to the Ninth Circuit’s new pilot program. See Exh. 1, p. 11, Supp. App. to Response for Perry et al.
This does not qualify as an immediate need that justifies dispensing with the notice-and-comment procedures required by federal law. While respondents (the plaintiffs in the District Court) had indicated their approval of the plan, no party alleged that it would be imminently harmed if the trial were not broadcast. Had an administrative agency acted as the District Court did here, the immediate need exception would likely not have been available. See 5 U. S. C. § 553(b)(B) (administrative agencies cannot invoke an exception to affording notice and comment before rulemaking unless the notice- and-comment procedures would be “impracticable, unnecessary, or contrary to the public interest”). In issuing its order the District Court relied on the Ninth Circuit Judicial Council’s pilot program. Yet nothing in that program— which was not adopted after notice-and-comment procedures, cf. 28 U. S. C. § 332(d)(1) — required any “immediate” revision in local rules. The Ninth Circuit Judicial Council did not purport to modify or abrogate the District Court’s *195 local Rule. Nor could it, as the Judicial Council only has the power to modify or abrogate local rules that conflict with federal law. See § 332(d)(4) (permitting a circuit court council to modify a local rule that is “found inconsistent” with rules promulgated by the Supreme Court). No federal law requires that the District Court broadcast some of its cases. The District Court’s local Rule, in addition, was not a conforming amendment to Ninth Circuit policy, because that policy does not require district courts to broadcast proceedings.
Applicants also have shown that irreparable harm will likely result from the denial of the stay. Without a stay, the District Court will broadcast the trial. It would be difficult — if not impossible — to reverse the harm from those broadcasts. The trial will involve various witnesses, including members of same-sex couples; academics, who apparently will discuss gender issues and gender equality, as well as family structures; and those who participated in the campaign leading to the adoption of Proposition 8. This Court has recognized that witness testimony may be chilled if broadcast. See Estes v. Texas, 381 U. S. 532, 547 (1965); id., at 591 (Harlan, J., concurring). Some of applicants’ witnesses have already said that they will not testify if the trial is broadcast, and they have substantiated their concerns by citing incidents of past harassment. See, e.g., Exh. K to Defendant-Intervenors’ Motion (71 news articles detailing incidents of harassment related to people who supported Proposition 8). These concerns are not diminished by the fact that some of applicants’ witnesses are compensated expert witnesses. There are qualitative differences between making public appearances regarding an issue and having one’s testimony broadcast throughout the country. Applicants may not be able to obtain adequate relief through an appeal. The trial will have already been broadcast. It is difficult to demonstrate or analyze whether a witness would have testified differently if his or her testimony had not been broad *196 cast. And witnesses subject to harassment as a result of broadcast of their testimony might be less likely to cooperate in any future proceedings.
The balance of equities favors applicants. While applicants have demonstrated the threat of harm they face if the trial is broadcast, respondents have not alleged any harm if the trial is not broadcast. The issue, moreover, must be resolved at this stage, for the injury likely cannot be undone once the broadcast takes place.
This Court also has a significant interest in supervising the administration of the judicial system. See this Court’s Rule 10(a) (the Court will consider whether the courts below have “so far departed from the accepted and usual course of judicial proceedings ... as to call for an exercise of this Court’s supervisory power”). The Court may use its supervisory authority to invalidate local rules that were promulgated in violation of an Act of Congress. See Frazier, 482 U. S., at 645-646; id., at 652, 654 (Rehnquist, C. J., dissenting). The Court’s interest in ensuring compliance with proper rules of judicial administration is particularly acute when those rules relate to the integrity of judicial processes. The District Court here attempted to revise its rules in haste, contrary to federal statutes and the policy of the Judicial Conference of the United States. It did so to allow broadcasting of this high-profile trial without any considered standards or guidelines in place. The arguments in favor of developing procedures and rules to allow broadcast of certain cases have considerable merit, and reasonable minds can surely differ over the general and specific terms of rules and standards adopted for that purpose. Here, however, the order in question complied neither with existing rules or policies nor the required procedures for amending them.
By insisting that courts comply with the law, parties vindicate not only the rights they assert but also the law’s own insistence on neutrality and fidelity to principle. Those systematic interests are all the more evident here, where the *197 lack of a regular rule with proper standards to determine the guidelines for broadcasting could compromise the orderly, decorous, rational traditions that courts rely upon to ensure the integrity of their own judgments. These considerations, too, are part of the reasons leading to the decision to grant extraordinary relief.
In addressing a discrete instance authorizing a closed-circuit broadcast of a trial, Congress has illustrated the need for careful guidelines and standards. The trial of the two defendants in the Oklahoma City bombing case had been transferred to the United States District Court for the District of Colorado, so it was set to take place in Denver. That meant the families of deceased and surviving victims in and around Oklahoma City would not have the opportunity to observe the trial. Congress passed a statute that allowed victims’ families to watch the trial on closed-circuit television. 42 U. S. C. § 10608. The statute was drawn with care to provide precise and detailed guidance with respect to the wide range of issues implicated by the broadcast. See § 10608(a) (the statute only applies “in cases where the venue of the trial is changed” to a city that is “out of the State” and “more than 350 miles from the location in which those proceedings originally would have taken place”); §§ 10608(a)-(b) (standards for who can view such trials); § 10608(c) (restrictions on transmission). And the statute gave the Judicial Conference of the United States rulemaking authority “to effectuate the policy addressed by this section.” § 10608(g). In the present case, by contrast, over a span of three weeks the District Court and Ninth Circuit Judicial Council issued, retracted, and reissued a series of Web site postings and news releases. These purport to amend rules and policies at the heart of an ongoing consideration of broadcasting federal trials. And they have done so to make sure that one particular trial may be broadcast. Congress’ requirement of a notice-and-comment procedure prevents just such arbitrary changes of court rules. Instead, courts *198 must use the procedures prescribed by statute to amend their rules, 28 U. S. C. §2071.
If Local Rule 77-3 had been validly revised, questions would still remain about the District Court’s decision to allow broadcasting of this particular trial, in which several of the witnesses have stated concerns for their own security. Even districts that allow trials to be broadcast, see Civ. Rule 1.8 (SDNY 2009); Civ. Rule 1.8 (EDNY 2009), recognize that a district judge’s discretion to broadcast a trial is limited, see, e.g., Hamilton v. Accu-Tek, 942 F. Supp. 136, 138 (EDNY 1996) (broadcast forbidden unless “there is no interference with the due process, the dignity of litigants, jurors and witnesses, or with other appropriate aspects of the administration of justice”). Consequently, courts in those districts have allowed the broadcast of their proceedings on the basis that those cases were not high profile, E*Trade Financial Corp. v. Deutsche Bank AG, 582 F. Supp. 2d 528, 535 (SDNY 2008), or did not involve witnesses, Marisol A v. Giuliani, 929 F. Supp. 660, 661 (SDNY 1996); Katzman v. Victoria’s Secret Catalogue, 923 F. Supp. 580, 586-587 (SDNY 1996). Indeed, one District Court did not allow the broadcasting of its proceedings because the case “involv[ed] very sensitive issues.” Schoeps v. Museum of Modern Art, 599 F. Supp. 2d 532, 534 (SDNY 2009). This case, too, involves issues subject to intense debate in our society. The District Court intends not only to broadcast the attorneys’ arguments but also witness testimony. See Sony BMG, 564 F. 3d, at 11 (Lipez, J., concurring) (distinguishing broadcast of attorneys’ arguments from other parts of the trial). This case is therefore not a good one for a pilot program. Even the studies that have been conducted thus far have not analyzed the effect of broadcasting in high-profile, divisive cases. See Application for Stay 17 (warning by Judge Edward R. Becker that in “ ‘truly high-profile cases,’ ” one can “ ‘[j]ust imagine what the findings would be’ ” (quoting Exh. 21, at 2, App. to Pet.)).
*199 III
The District Court attempted to change its rules at the eleventh hour to treat this case differently from other trials in the district. Not only did it ignore the federal statute that establishes the procedures by which its rules may be amended, its express purpose was to broadcast a high-profile trial that would include witness testimony about a contentious issue. If courts are to require that others follow regular procedures, courts must do so as well. The Court grants the application for a stay of the District Court’s order of January 7, 2010, pending the timely filing and disposition of a petition for a writ of certiorari or the filing and disposition of a petition for a writ of mandamus.

It is so ordered.