07-5468-cv
Debbie Almontaser v. NYC Dep't of Educ.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: February 5, 2008                               Decided: March 20, 2008)

Docket No.  07-5468-cv

_____

DEBBIE ALMONTASER,

*Plaintiff-Appellant*,

— v .—

NEW YORK CITY DEPARTMENT OF EDUCATION, JOEL KLEIN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHANCELLOR OF THE NEW YORK CITY DEPARTMENT OF EDUCATION, ROSEMARY STUART, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS COMMUNITY SUPERINTENDENT OF DISTRICT 15 AND HIRING MANAGER, MICHAEL BLOOMBERG, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS THE MAYOR OF THE CITY OF NEW YORK AND DENNIS WALCOTT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DEPUTY MAYOR FOR EDUCATION AND COMMUNITY DEVELOPMENT,

*Defendants-Appellees*.

_____

Before:      NEWMAN, WINTER, AND B.D. PARKER, *Circuit Judges*.

_____

Appeal from an order of the United States District Court for the Southern District of New York (Stein, *J.*), denying a motion for a preliminary injunction.

AFFIRMED.

_____

1

ALAN LEVINE, New York, NY (Cynthia Rollings, Melvin L. Wulf, Clare R. Norins, Beldock Levine & Hoffman LLP; and Arthur Eisenberg, New York Civil Liberties Union Foundation, *on the brief*), *for Plaintiff-Appellant*.

DRAKE A. COLLEY, Assistant Corporation Counsel (Edward F.X. Hart, *on the brief*), *for* Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY.

_____

PER CURIAM:

Plaintiff-Appellant Debbie Almontaser appeals the December 5, 2007 order of the United States District Court for the Southern District of New York (Stein, *J.*), denying her motion for a preliminary injunction. We affirm the order.

**BACKGROUND**

From 2005 to 2007, Almontaser, an Arab-American, has led the development of the Khalil Gibran International Academy ("KGIA"), a New York City public high school offering classes in Arab language and culture to foster multicultural understanding and to prepare students for careers in international affairs and diplomacy. The record reflects that since the New York City Department of Education ("DOE") announced its approval of the school in February 2007, certain groups have claimed that both KGIA and Almontaser are affiliated with radical Islam. On August 3, 2007, an internet-based group called Stop the Madrasa Coalition issued a press release alleging that Almontaser was connected to t-shirts bearing the words "Intifada NYC" that were allegedly sold by a group known as Arab Women Active in the Arts and Media

2

("AWAAM").  Although the record indicates that Almontaser is not affiliated with AWAAM, *New York Post* reporter Chuck Bennett sought *inter alia* to interview her about the organization and its t-shirts.  Almontaser wanted to avoid the interview.  DOE press officer David Cantor instructed her to participate, but not to address the t-shirts.

On August 3, 2007, Bennett interviewed Almontaser by telephone with DOE press officer Melody Meyer on the line.  Almontaser told Bennett that she was not connected to AWAAM and that AWAAM had nothing to do with KGIA.  When Bennett questioned her about the meaning of the Arabic word "intifada," Almontaser accurately explained that the root of the word means "shaking off."[1]  She also stated that the word has been associated with violence and the Palestinian/Israeli conflict and emphasized that she would never affiliate herself with an organization that condones violence.  Meyer interjected only once during the call to emphasize that Almontaser does not believe in violence.  Immediately after the interview, Meyer called Almontaser to tell her that she did a good job.

The next day, the *New York Post* ran an article entitled "City Principal is 'Revolting.'"  It featured a picture of Almontaser with the caption, "Furor: The Pro-violence shirt is being

---

[1] "Intifada," a gerund, means "to shiver, shudder, tremor."  Hans Wehr, *Arabic-English Dictionary (The Hans Wehr Dictionary of Modern Written Arabic)* 1157 (J. Milton Cowan ed., 4th ed. 1979).  As a noun, "intifada" also refers to "[a]n Arab uprising or revolt," specifically "the Palestinian insurrection and unrest in the Israeli-occupied West Bank and Gaza Strip, which began in late 1987."  *Oxford English Dictionary Additions Series* (Oxford University Press 1993), *available at* http://dictionary.oed.com/cgi/entry/00293434?single=1&query_type=words&queryword=intifada&first=1&max_to_show=10.  "Na-fa-da," the root word of "intifada," means "to shake (s.th.), shake off (s.th. from), shake out, dust, dust off (s.th.); to knock ashes [as from a cigarette], to make (s.o.) shiver (fever); to recover, recuperate (from); to shake off one's laziness."  Wehr, *supra*, at 1157.

defended by Principal Debbie Almontaser (above)." The article asserted that "[a]ctivists with ties to the principal of the city's controversial new Arabic-themed school are hawking T-shirts that glorify Palestinian terror" and that Almontaser "downplayed the significance of the T-shirts." The district court found that the *New York Post* correctly attributed to Almontaser her explanation that the root of the word "intifada" means "shaking off," that the word has "develop[ed] a negative connotation due to the uprising in the Palestinian-Israeli areas," and that she "[didn't] believe the intention is to have any of that kind of [violence] in New York City." It is undisputed by the parties that the paper incorrectly and misleadingly added the phrase "and shaking off oppression" to Almontaser's statement, "I think [the t-shirts are] pretty much an opportunity for girls to express that they are part of New York City society."

The *New York Post* and other media subsequently published stories and letters to the editor characterizing the statements attributed to Almontaser by the *New York Post* as a defense of violence against Israel. Within days, the Deputy Mayor for Education and Community Development, Dennis Walcott, met with Almontaser on behalf of DOE Chancellor Joel Klein and insisted on her resignation. Under pressure from DOE officials, Almontaser issued an apology drafted by the DOE and resigned from her position as KGIA's acting interim principal.

On October 16, 2007, Almontaser applied for the position of permanent principal of KGIA. Two days later, *The New York Times* reported that Cantor, speaking on behalf of Chancellor Klein, stated that Almontaser "would not be placed as principal at the school." The office conducting the first level of review for the position forwarded Almontaser's application to Hiring Manager Rosemary Stuart with the notation that it was not recommended. Stuart did not

4

forward Almontaser's application for the next level of review.

Almontaser sued, alleging, *inter alia*, retaliation in violation of her First Amendment rights and infringement of her Fourteenth Amendment right to due process. She moved for a preliminary injunction: 1) requiring the DOE to "afford[] [her] a full and fair opportunity to be reviewed and considered for the position of [permanent] principal at [KGIA]" according to the applicable hiring regulations by a "disinterested person," and 2) "enjoining and restraining defendants from proceeding pursuant to [these regulations] or to otherwise select, assign, or appoint a principal at [KGIA] until [she] is afforded such consideration." *See* Fed. R. Civ. P. 65. After a two-day hearing, the district court denied the application. Almontaser appealed.

**DISCUSSION**

A party seeking a preliminary injunction "must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 113-14 (2d Cir. 2006). In light of the DOE's January 2008 hire of a permanent principal for KGIA, Almontaser seeks an injunction "alter[ing], rather than maintain[ing], the status quo," and must meet the more rigorous standard of demonstrating a "clear" or "substantial" showing of a likelihood of success on the merits. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). "The district court has wide discretion in determining whether to grant a preliminary injunction, and this Court reviews [its] determination only for abuse of discretion." *Grand River*

5

*Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law. *Id.* While "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern," the Supreme Court has clarified that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 421 (2006).

Based on the record at this stage of the litigation, we conclude that the district court did not abuse its discretion by denying Almontaser's application for injunctive relief. The district court found that Almontaser's statements to the *New York Post* "were manifestly made in her official capacity" and therefore not constitutionally protected. It consequently concluded that she failed to demonstrate a likelihood that she would succeed on the merits of her First Amendment retaliation claim. Assuming that the threat of irreparable injury was present, the district court noted that the DOE press office directed Almontaser to speak with Bennett, and structured and oversaw her participation. Although Almontaser's explanation about the meaning of the word "intifada" "fell outside the topics on which she had been directed to speak," the district court found that this explanation was nevertheless made pursuant to her role as KGIA's acting interim principal. This finding was not an abuse of discretion.

The district court also found that even if Almontaser's speech to the *New York Post* was constitutionally protected, her removal as interim principal at KGIA and the DOE's decision to

6

not forward her application after Stuart's review was justified under the balancing test used to determine constitutional limitations on public employees' speech set forth in *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968). Having concluded that the district court did not abuse its discretion when it found that Almontaser's speech was not protected, we need not address this finding. Nor are we now called upon to address the more complex issue presented by this case, namely, whether a public employee, who is required by her employer to speak to the press as a condition of her employment, may be sanctioned for speaking accurately when her statement is, as her employer knows, inaccurately reported and then misconstrued by the press. We believe the issue is best addressed in the first instance by the district court.

The Defendants-Appellees request costs from Almontaser in light of the "equities" said to favor them. We deny this request as self-evidently frivolous.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's order of December 5, 2007, denying the preliminary injunction motion.

7