08-6090-cv
Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2009
(Argued: November 24, 2009        Decided: March 10, 2010)
Docket No. 08-6090-cv

----------------------------------------------------x

Citigroup Global Markets, Inc.,

        Plaintiff-Appellee,

        -- v. --

VCG Special Opportunities Master Fund Limited, f/k/a CDO Plus
Master Fund Limited,

        Defendant-Appellant.

----------------------------------------------------x

B e f o r e :  FEINBERG, WALKER, KATZMANN, Circuit Judges.

VCG Special Opportunities Master Fund Limited ("VCG") appeals from an order of the United States District Court for the Southern District of New York (Barbara S. Jones, Judge) granting plaintiff-appellee Citigroup Global Markets, Inc.'s ("CGMI") motion for a preliminary injunction and enjoining VCG from proceeding with an arbitration initiated against CGMI before the Financial Industry Regulatory Authority.  VCG also appeals the district court's order denying its motion for reconsideration. We hold that this circuit's "serious questions" standard for the consideration of a motion for a preliminary injunction remains valid in the wake of recent Supreme Court opinions clarifying the

-1-

requirements and burdens placed on a party seeking a preliminary injunction. We further hold that, in applying that standard to CGMI's motion, the district court did not abuse its discretion in granting the requested injunction. We therefore AFFIRM the district court's orders granting the preliminary injunction and denying VCG's motion for reconsideration.

AFFIRMED.

STEVEN G. MINTZ (Terence W. McCormick and Joshua H. Epstein, on the brief), Mintz & Gold LLP, New York, NY, for Defendant-Appellant.

ALLAN J. ARFFA (Karen R. King, on the brief), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, for Plaintiff-Appellee.

JOHN M. WALKER, JR., Circuit Judge:

VCG Special Opportunities Master Fund Limited ("VCG") appeals from the November 12, 2008 order of the United States District Court for the Southern District of New York (Barbara S. Jones, Judge) granting the plaintiff-appellee Citigroup Global Markets, Inc.'s ("CGMI") motion for a preliminary injunction and enjoining VCG from proceeding with an arbitration initiated against CGMI before the Financial Industry Regulatory Authority ("FINRA"). VCG also appeals from the district court's May 29, 2009 order denying its motion for reconsideration of the preliminary injunction. Because we conclude that the "serious

-2-

"questions" standard for assessing a movant's likelihood of success on the merits remains valid in the wake of recent Supreme Court cases, and because neither the district court's assessment of the facts nor its application of the law supports a finding of abuse of discretion, we AFFIRM as to both orders.

**BACKGROUND**

On July 17, 2006, VCG, a hedge fund based on the Isle of Jersey, entered into a brokerage services agreement with CGMI. Under the agreement, CGMI was obligated to provide prime brokerage services by clearing and settling trades in fixed income securities for VCG. VCG then entered into a credit default swap agreement with Citibank, N.A. (Citibank) (a sister-affiliate of appellee CGMI under the corporate umbrella of Citigroup, Inc.). VCG alleges that it was a "customer" of CGMI, which allegedly acted as the middleman with respect to the series of transactions culminating in the credit default swap agreement with Citibank. After entering into the swap, Citibank eventually declared a writedown of the assets covered in its credit default swap agreement with VCG, triggering VCG's obligation to pay Citibank a total of $10,000,000.

VCG sued Citibank, seeking a declaration that, by declaring the writedown, Citibank had violated the terms of the parties' credit default swap agreement. The district court found in Citibank's favor and also found that VCG was in breach of the

agreement by failing to fulfill its payment obligation. VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A., 594 F. Supp. 2d 334 (S.D.N.Y. 2008), aff'd, No. 08-5707, 2009 WL 4576542 (2d Cir. Dec. 8, 2009).

In addition to litigating its claims against Citibank, VCG began arbitration proceedings against CGMI before the FINRA pursuant to FINRA Rule 12200.[1] In response, CGMI filed a complaint in the district court to permanently enjoin the arbitration and for a declaration that CGMI had no obligation to arbitrate with VCG regarding the claims submitted to the FINRA arbitrators. On June 20, 2008, CGMI moved for a temporary restraining order and preliminary injunction against the FINRA arbitration pending a final resolution of CGMI's claims. CGMI asserted that it was not a party to, and did not broker, the VCG-Citibank credit default swap. Compl. ¶ 3. Specifically, CGMI argued that VCG was not a "customer" of CGMI for purposes of those transactions and, therefore, CGMI was under no obligation to arbitrate VCG's claims under the FINRA rules.

In opposition to the preliminary injunction motion, VCG submitted a declaration stating that "CGMI recommended and set

---

[1] In relevant part, FINRA Rule 12200 requires members of the FINRA to arbitrate the disputes pursuant to the FINRA Code of Arbitration Procedure if arbitration is "requested by [a] customer," "[t]he dispute is between a customer and a member or associated person of a member," and "[t]he dispute arises in connection with the business activities of the member."

-4-

the terms for" the credit default swap and that VCG's employees had "dealt with several CGMI representatives in connection with the transaction, but most often with Jeff Gapusan, Donald Qu[i]ntin, and Jaime Aldama." Wong Decl. ¶ 7.[2] The declaration further stated that "[t]he terms of the contract were negotiated directly with [a] CGMI employee, Jeff Gapusan, who acted as liaison for the trading desk at CGMI." Id. at ¶ 19; see also Gruber Decl., Ex. B (FINRA records listing the three men identified by Wong as the go-betweens on the Citibank deal as employees of CGMI).

In arguing that it had not acted as a middleman for the VCG-Citibank credit default swap and that VCG was not its "customer," CGMI contended that the people identified by VCG as its CGMI contacts were acting as agents of Citibank rather than CGMI, though they were formally employed by CGMI at the time of the VCG-Citibank negotiations. Vogeli Decl. ¶ 6. CGMI also submitted a copy of VCG's initial disclosures, from VCG's action

---

[2] The declaration stated that "the fee to be paid to CGMI was 5.5% per annum, calculated on the 'notional amount' of $10,000,000 of the collateralized debt obligation, Millstone. . . . In return, VCG agreed to pay CGMI only upon the occurrence of a credit event." Wong Decl. ¶ 19. The declaration misstates the parties to, and obligations provided in, the credit default swap agreement. As each of the documents underlying the swap agreement demonstrates, and contrary to the statements in Wong's declaration, Citibank, not CGMI, was the party with whom VCG contracted, and VCG, not CGMI, was to be paid 5.5% per annum. See Arffa Decl., Exs. 1-5.

-5-

against Citibank, in which VCG had listed Jeff Gapusan and Donald Quintin as trading personnel employed by Citibank, not CGMI. Arffa Decl., Ex. 6.[3]

On November 12, 2008, the district court granted CGMI's motion for a preliminary injunction. In granting the injunction, the district court applied this circuit's long-established standard for the entry of a preliminary injunction, under which the movant is required to show "'irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor.'" Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd., No. 08-cv-5520, 2008 WL 4891229, at *2 (S.D.N.Y. Nov. 12, 2008) (quoting Almontaser v. N.Y. City Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008)). The district court held that CGMI had demonstrated a likelihood of irreparable harm, but had failed to make a showing of

---

[3] Following oral argument on CGMI's motion for a preliminary injunction, VCG filed a supplemental initial disclosure in its case against Citibank and submitted the new disclosure to the district court in this case. The supplemental disclosure lists Gapusan and Quintin as employees of CGMI. VCG Sur-Reply in Opp'n to Mot. for Prelim. Inj., Ex. A. The district court noted that the original disclosures were "not judicial admissions demonstrating that VCG knew that it was dealing with Citibank [and not CGMI]," but also that the disclosures gave the court reason to pause when considering VCG's understanding of the three relevant employees' roles at the time VCG interacted with them. Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd., No. 08-cv-5520, 2008 WL 4891229, at *5 (S.D.N.Y. Nov. 12, 2008).

"probable success" on the merits based on its claim that there was no customer relationship between CGMI and VCG with respect to the credit default swap transactions. Id. at *2, *4. The district court found, however, that CGMI had provided evidence that raised "serious questions" as to whether VCG was in fact a customer of CGMI with respect to the swap transaction and granted the preliminary injunction on that basis. Id. at *5-*6.

The district court further noted that, while some prior cases have required arbitration under the FINRA rules for claims involving non-securities, those cases "dealt in large part with individual brokers' fraudulent conveyances or investments, where there is a strong policy argument favoring arbitration." Id. The district court concluded that, "in light of the undefined scope of Rule [12200's 'business activities' prerequisite and its application to cases not involving securities transactions,] and the unique set of facts before the Court," CGMI had presented legal and factual issues that made its assertions a "fair ground for litigation." Id. at *6. Finally, the district court found that the balance of hardships tipped decidedly in CGMI's favor given that an injunction would simply freeze the arbitration without destroying VCG's ability to continue that arbitration in the event that the district court determined that the dispute fell within the scope of the FINRA rules. Id.

On May 29, 2009, the district court denied VCG's motion for

reconsideration, rejecting VCG's argument that <u>Winter v. Natural Resources Defense Council, Inc.</u>, 129 S. Ct. 365 (2008), had eliminated the "serious questions" prong of this circuit's preliminary injunction standard.

This appeal followed.

**DISCUSSION**

This Court reviews the grant of a preliminary injunction for abuse of discretion. See <u>Almontaser</u>, 519 F.3d at 508; <u>Grand River Enter. Six Nations, Ltd. v. Pryor</u>, 481 F.3d 60, 66 (2d Cir. 2007). "A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law." <u>Almontaser</u>, 519 F.3d at 508.

VCG first contends that the district court abused its discretion by applying the wrong legal standard to CGMI's request for a preliminary injunction. VCG argues that three recent decisions of the Supreme Court–<u>Munaf v. Geren</u>, 128 S. Ct. 2207 (2008); <u>Winter</u>, 129 S. Ct. 365; and <u>Nken v. Holder</u>, 129 S. Ct. 1749 (2009)–have eliminated this circuit's "serious questions" standard for the entry of a preliminary injunction, and that, in light of the district court's finding that CGMI failed to demonstrate its likelihood of success on the merits, the entry of a preliminary injunction in this case must be reversed. In the alternative, VCG argues that even if this circuit's standard for a preliminary injunction remains intact, the district court

-8-

committed several legal errors in determining that CGMI had presented "serious questions" as to the arbitrability of VCG's claims.

Winter articulates the following standard for issuing a preliminary injunction:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

Winter, 129 S. Ct. at 374; see also Munaf, 128 S. Ct. at 2219; Nken, 129 S. Ct. at 1761. Although not stated explicitly in its briefs, we take VCG's position to be that the standard articulated by these three Supreme Court cases requires a preliminary injunction movant to demonstrate that it is more likely than not to succeed on its underlying claims, or in other words, that a movant must show a greater than fifty percent probability of success on the merits. Thus, according to VCG, a showing of "serious questions" that are a fair ground for litigation will not suffice. See VCG Br. 23-25 (describing the required showing as a "probability" of success, as opposed to a "possibility").

**I.  The Continued Viability of the "Serious Questions" Standard**

For the last five decades, this circuit has required a party seeking a preliminary injunction to show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2)

sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979); accord Almontaser, 519 F.3d at 508; Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir. 1969); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).[4]  The "serious questions" standard permits a district

_____

[4]  We have recognized three limited exceptions to this general standard, none of which is relevant here.  First,

> [W]here the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous ["serious questions"] standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim.

Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995) (first alteration in original) (quoting Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989)).

Second, "[a] heightened 'substantial likelihood' standard may also be required when the requested injunction (1) would provide the plaintiff with 'all the relief that is sought' and (2) could not be undone by a judgment favorable to defendants on the merits at trial."  Mastrovincenzo v. City of New York, 435 F.3d 78, 90 (2d Cir. 2006) (quoting Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34-35 (2d Cir. 1995)).

Third, a "mandatory" preliminary injunction that "alter[s] the status quo by commanding some positive act," as opposed to a "prohibitory" injunction seeking only to maintain the status quo, "should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Tom Doherty Assocs., 60 F.3d at 34 (quoting Abdul Wali v.

-10-

court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. See, e.g., F.& M. Shaefer Corp. v. C. Schmidt & Sons, Inc., 597 F.2d 814, 815-19 (2d Cir. 1979). Because the moving party must not only show that there are "serious questions" going to the merits, but must additionally establish that "the balance of hardships tips decidedly" in its favor, Jackson Dairy, 596 F.2d at 72 (emphasis added), its overall burden is no lighter than the one it bears under the "likelihood of success" standard.

The value of this circuit's approach to assessing the merits of a claim at the preliminary injunction stage lies in its flexibility in the face of varying factual scenarios and the greater uncertainties inherent at the outset of particularly complex litigation. Preliminary injunctions should not be mechanically confined to cases that are simple or easy. Requiring in every case a showing that ultimate success on the merits is more likely than not "is unacceptable as a general rule. The very purpose of an injunction . . . is to give temporary relief based on a preliminary estimate of the strength

_____

Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)).

of plaintiff's suit, prior to the resolution at trial of the factual disputes and difficulties presented by the case. Limiting the preliminary injunction to cases that do not present significant difficulties would deprive the remedy of much of its utility."  11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.3 (2d ed. 2009); see also Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc) ("The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability test. . . .  The equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case. Thus, an effort to apply the probability language to all cases with mathematical precision is misplaced.").[5]

---

[5]  We note that, prior to Winter, seven of the twelve regional Courts of Appeals, including this circuit and the Eighth Circuit in Dataphase, applied a preliminary injunction standard that permitted flexibility when confronting some probability of success on the merits that falls short of a strict fifty-one percent.  See Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007), overruled in part by Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 & n.10 (9th Cir. 2009) (recognizing that the Ninth Circuit's previous standard as articulated in Lands Council was overruled at least with respect to the formerly permissible showing of a "possibility" of irreparable harm); Oklahoma ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc., 455 F.3d 1107, 1112-13 (10th Cir. 2006); Mich. Bell Tel. Co. v. Engler, 257 F.3d 587, 592 (6th Cir. 2001); Davenport v. Int'l Broth. of Teamsters, AFL-CIO, 166 F.3d 356, 361 (D.C. Cir. 1999);  Duct-O-Wire Co. v. U.S. Crane, Inc., 31 F.3d 506, 509 (7th Cir. 1994); Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624-25 (8th Cir. 1987); Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189, 195 (4th Cir.

Indeed, the Supreme Court, prior to the trilogy of cases cited by VCG, has counseled in favor of a preliminary injunction standard that permits the entry of an injunction in cases where a factual dispute renders a fully reliable assessment of the merits impossible.  In <u>Ohio Oil Co. v. Conway</u>, 279 U.S. 813 (1929), the Court dealt with a factual dispute, relating to the effect on the plaintiff of a state tax on oil revenues, which had to "be resolved before the constitutional validity of [a] statute

---

1977), <u>overruled by</u> <u>Real Truth About Obama, Inc. v. Fed. Election Comm'n</u>, 575 F.3d 342, 346-47 (4th Cir. 2009).

On the other hand, three of our sister circuits have traditionally limited their preliminary injunction standards to the four factors cited in <u>Winter</u>, without reference to the possibility of obtaining an injunction based on a showing of serious questions going to the merits.  <u>See</u> <u>Snook v. Trust Co. of Ga. Bank of Savannah, N.A.</u>, 909 F.2d 480, 483 n.3 (11th Cir. 1990) (noting that the "serious questions" standard had not been recognized in the Eleventh Circuit); <u>Concerned Women for Am., Inc. v. Lafayette County</u>, 883 F.2d 32, 34 (5th Cir. 1989); <u>In re Arthur Treacher's Franchisee Litig.</u>, 689 F.2d 1137, 1147 n.14 (3d Cir. 1982) (rejecting the Second Circuit's "serious questions" standard as articulated in <u>Hamilton Watch</u>).  The First Circuit does not generally provide for the possibility of a flexible showing as to the merits, <u>see</u> <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993) ("In the ordinary course, plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief."), but has in the past recognized a potentially more flexible approach, <u>see</u> <u>Tuxworth v. Froehlke</u>, 449 F.2d 763, 764 (1st Cir. 1971) ("No preliminary injunction should be granted in any case unless there appears to be a reasonable possibility of success on the merits.  Granted that the necessary degree of likelihood of success depends upon various considerations, we must perceive at least some substantial possibility." (internal citation omitted)).

-13-

[could] be determined." Id. at 814. Faced with this situation, the Court instructed that "[w]here the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party [in the absence of such an injunction] will be certain and irreparable . . . the injunction usually will be granted." Id.; see also Mazurek v. Armstrong, 520 U.S. 968, 975-76 (1997) (reversing the Ninth Circuit's finding that movants had shown a "fair chance of success on the merits," while recognizing the "fair chance" standard and its potential application in future cases).

The Supreme Court's recent opinions in Munaf, Winter, and Nken have not undermined its approval of the more flexible approach signaled in Ohio Oil. None of the three cases comments at all, much less negatively, upon the application of a preliminary injunction standard that softens a strict "likelihood" requirement in cases that warrant it. Munaf involved a preliminary injunction barring the transfer to Iraqi custody of an individual captured in Iraq by the Multinational Force-Iraq. Munaf, 128 S. Ct. at 2214-15. That injunction was premised on "jurisdictional issues . . . so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation." Id. at 2219 (emphasis and internal quotation marks omitted). The Supreme Court vacated that injunction on the grounds that a

-14-

"likelihood of jurisdiction" was irrelevant to the preliminary injunction consideration and could not substitute for a consideration of the merits. The Court in Munaf simply stated that a question as to a court's jurisdiction over a claim "says nothing about the 'likelihood of success on the merits,'" id., but provided nothing in the way of a definition of the phrase "a likelihood of success." See id.

Nor does Winter address the requisite probability of success of the movant's underlying claims. While Winter rejected the Ninth Circuit's conceptually separate "possibility of irreparable harm" standard, 129 S. Ct. at 375-76, it expressly withheld any consideration of the merits of the parties' underlying claims, id. at 376, 381. Rather, the Court decided the case upon the balance of the equities and the public interest. 129 S. Ct. at 375-76, 381.[6]

_____

[6] To this extent, Winter reiterates the majority position of the circuits, including this one, that a showing of irreparable harm is fundamental to any grant of injunctive relief. See, e.g., Almontaser, 519 F.3d at 508 ("A party seeking a preliminary injunction must show irreparable harm absent injunctive relief. . . ." (internal quotation marks omitted and emphasis added)); Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991) ("The 'balance of hardship' test does not negate the requirement that the [plaintiff] show some irreparable harm."), overruled on other grounds by Real Truth About Obama, 575 F.3d 342; Friendship Materials, Inc. v. Mich. Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982) ("Thus, the alternate test does not remove the irreparable harm requirement."); Dataphase Sys., Inc., 640 F.2d at 114 n.9 ("This court previously noted that under any test the movant is required to show the threat of irreparable harm."); Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 574 (5th Cir. 1974) ("[W]here no

-15-

Finally, Nken likewise did not address the issue of a moving party's likelihood of success on the merits. Nken provides a four factor standard for granting a stay pending appeal, which the Court recognized as overlapping substantially with the preliminary injunction standard. 129 S. Ct. at 1761. Although the Court repeated the "likely to succeed on the merits" phrasing, it did not suggest that this factor requires a showing that the movant is "more likely than not" to succeed on the merits.[7]

If the Supreme Court had meant for Munaf, Winter, or Nken to abrogate the more flexible standard for a preliminary injunction, one would expect some reference to the considerable history of the flexible standards applied in this circuit, seven of our sister circuits, and in the Supreme Court itself.[8] We have

irreparable injury is alleged and proved, denial of a preliminary injunction is appropriate.").

[7] The Supreme Court implies just the opposite in Nken, which contrasts a showing of a likelihood of success with a chance of success that is only "better than negligible." 129 S. Ct. at 1761. Because a "serious questions" showing necessarily requires more than that the chances for success are only "better than negligible," this circuit's "serious questions" standard does not conflict with the Supreme Court's decision in Nken.

[8] As the Supreme Court noted in Nken, "[t]here is substantial overlap between [the factors governing a motion to stay] and the factors governing preliminary injunctions; not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." 129 S. Ct. at 1761 (internal citation omitted). In that light, we note that the Supreme Court followed

-16-

recognized this flexible standard since at least 1953, see Hamilton Watch, 206 F.2d at 740, and our standard has survived earlier instances in which the Supreme Court described the merits prerequisite to a preliminary injunction as a "likelihood of success" without specifically addressing the content of such a "likelihood," see, e.g., Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975) ("The other inquiry relevant to preliminary relief is whether respondents made a sufficient showing of the likelihood of ultimate success on the merits.").  We have found no command from the Supreme Court that would foreclose the application of our established "serious questions" standard as a means of assessing a movant's likelihood of success on the merits.  Our standard accommodates the needs of the district courts in confronting motions for preliminary injunctions in factual situations that vary widely in difficulty and complexity.  Thus, we hold that our venerable standard for assessing a movant's probability of success on the merits remains valid and that the

---

a flexible approach when, in recently addressing the standard for issuing a stay pending the disposition of a petition for a writ of certiorari, it stated that the grant of such a motion required a likelihood of irreparable harm, but required only a "reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari" and a "fair prospect that a majority of the Court will vote to reverse the judgment below." Hollingsworth v. Perry, 130 S. Ct. 705, 710 (2010) (per curiam).  Acknowledging the use of a sliding scale in certain situations, the Court further stated that "[i]n close cases the Circuit Justice or the Court will balance the equities and weigh the relative harms to the applicant and to the respondent." Id.

district court did not err in applying the "serious questions" standard to CGMI's motion.[9]

**II.  The District Court's Analysis**

Having determined that the district court did not err by applying the "serious questions" standard to CGMI's motion for a preliminary injunction, we turn to VCG's contentions that the district court misapplied that standard.  VCG argues that the district court erred in assessing the issue of arbitrability when it (1) failed to construe the FINRA arbitration rules in favor of arbitration absent "positive assurance" that VCG's claims in fact fell outside the scope of the arbitration agreement; (2) failed to recognize that VCG was a "customer" of CGMI as a matter of law; (3) found "serious questions" regarding whether a party requesting FINRA arbitration over a non-securities transaction must provide a strong policy argument in favor of arbitration; and (4) inappropriately weighed the balance of hardships.[10]

---

[9] We note that two of our sister circuits have retreated from a flexible approach in assessing the merits of a movant's case in light of Winter.  See Real Truth About Obama, 575 F.3d at 346-47; Am. Trucking Ass'ns, 559 F.3d at 1052.  We think the Fourth and Ninth Circuits have misread Winter's import.

[10] Neither party contests that arbitrability itself was an issue for the district court to decide.  See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) ("The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." (internal quotation marks omitted) (alteration in original)).

-18-

### A. "Positive Assurance" as to Non-Arbitrability and the Definition of "Customer"

VCG contends that our decision in John Hancock Life Insurance v. Wilson, 254 F.3d 48 (2d Cir. 2001), requires the district court to order the parties to arbitrate, even in the face of doubts as to the scope of the arbitration provision, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 58. VCG misapplies the holding of John Hancock in attacking the district court's decision.

John Hancock required a "positive assurance" of non-arbitrability in the face of an ambiguity in the scope of the arbitration provision of the NASD rules. Id. at 59-60 (finding that the term "customer" in the NASD rules includes the clients of an "associated person" of the firm against whom arbitration is sought). In this case, however, there is no ambiguity as to the scope of the FINRA rules defining the term "customer"; the only unresolved question is whether, as a factual matter, VCG was CGMI's "customer" under any definition of that term. If VCG's credit default swap arrangements were never handled by an agent of CGMI, acting for that purpose, then VCG was not the "customer" of CGMI under any reasonable construction of that term. VCG's argument based on John Hancock is inapposite given the nature of the dispute. Because the relevant question, in light of the

-19-

contradictions in the record, is whether VCG was a "customer" of CGMI in even the broadest sense of the word, and because this issue is in sharp dispute, the district court committed no error of law or fact in holding that this uncertainty poses a serious question going to the merits of CGMI's claims.

**B. Arbitrability of Disputes Involving Non-Securities**

VCG next argues that the preliminary injunction was based in part on too narrow a view of the types of disputes that are arbitrable under FINRA Rule 12200. The district court held that FINRA arbitration was not limited solely to disputes involving "business activities" related to securities, but stated that non-securities cases "have dealt in large part with individual brokers' fraudulent conveyances or investments, where there is a strong policy argument favoring arbitration." Citigroup Global Mkts., Inc., 2008 WL 4891229, at *6. The district court continued by stating, "[i]n light of the undefined scope of Rule 12200 and the unique set of facts before the Court, the Court concludes that CGMI has presented legal and factual issues that make its assertions a fair ground for litigation." Id.

Were the application of the FINRA rules to non-securities cases the sole ground on which the district court granted CGMI's motion for preliminary relief, we would be forced to confront the district court's suggested limitation of the definition of the term "business activities" in non-securities cases. However,

-20-

because the district court correctly ruled that VCG's customer status was a serious question going to the merits, we affirm the entry of the preliminary injunction even assuming an error of law as to the district court's understanding of the term "business activity."

## C.  Weighing the Balance of Hardships

VCG next argues that the district court failed to consider that VCG would be "deprived of its right to a speedy resolution of its grievance with a broker-dealer" and would have "to incur the cost and expend the energy involved in litigating the threshold arbitrability question."  VCG Br. 45.  The district court did not neglect these concerns: it expressly considered the impact of delay on VCG and weighed that hardship against those that would be imposed on CGMI in the absence of a preliminary injunction.  The district court's balancing of those hardships did not constitute an abuse of discretion.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's orders granting CGMI's motion for a preliminary injunction and denying VCG's motion for reconsideration.