Sullivan, Circuit Judge, concurring in part and dissenting in part:
*89 I agree with my colleagues that the Town's ordinance does not fall within the police powers exception to the ICCTA, and so I concur in Parts I, III, and IV of the majority opinion. I dissent merely with respect to its holding in Part II that we lack jurisdiction to review the district court's conclusion that the Railway's activities constitute "transportation by [a] rail carrier[ ]." 49 U.S.C. § 10501(b)(1).
I. BACKGROUND
The procedural quirks of this case bear noting. On January 26, 2016, the Railway filed a complaint, seeking both a declaration that the Town's pre-construction permitting ordinance was preempted by the ICCTA and injunctive relief barring enforcement of the ordinance. On June 29, 2016, the district court entered an order finding that (1) "the construction and operation of the Railway's planned intermodal facility constitute[d] 'transportation by a rail carrier,' " and (2) the ICCTA preempted the Town's pre-construction permitting regime. Accordingly, the district court "enjoin[ed] the Town from enforcing any regulation that prevents the Railway from constructing its proposed facility." Although the Railway completed construction of its facility in June 2017, the district court did not enter partial final judgment on the June 29, 2016 order until August 21, 2017.
Meanwhile, on August 8, 2017, the Town enacted a new ordinance that prohibited the storage of certain quantities of sodium and other chemicals within 250 meters of a school or waterway (the "Storage Ordinance"). On September 1, 2017, the Railway moved for a preliminary injunction, seeking to bar the Storage Ordinance's enforcement. The district court held a preliminary injunction hearing on September 25, 2017, but did not rule on the motion at that time. In the interim, the Court issued a TRO enjoining enforcement of the Storage Ordinance pending the preliminary injunction ruling. After resuming the hearing on November 1 and 2, 2017, the district court issued its December 7, 2017 order, which effectively granted (1) a preliminary injunction to the Railway, (2) judgment for the Railway, and (3) a permanent injunction as the remedy for the judgment.
II. DISCUSSION
A.
The majority first asserts that we lack jurisdiction to review whether the Railway's activities constitute transportation by a rail carrier because the Town's notice of appeal only refers to the December 7, 2017 order. According to the majority, that order discussed the district court's prior transportation-by-rail-carrier ruling "only to provide the procedural background of the case." This misreads both the relevant legal inquiry and the district court's order.
A party seeking a preliminary injunction must establish, among other things, that it "is likely to succeed on the merits," Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd. , 598 F.3d 30, 34 (2d Cir. 2010) (quoting Winter v. Natural Resources Defense Council, Inc. , 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ), and the district court's December 7, 2017 order clearly concluded that the Railway was assured of such success under the ICCTA. But whether implicit or explicit, such a determination turned on a finding that the Railway's activities were covered by the ICCTA in the first place. Specifically, the ICCTA provides that "[t]he jurisdiction of the [Surface Transportation] Board over transportation by rail carrier ... is exclusive" and that "the remedies provided under this part with *90 respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal and State law." 49 U.S.C. § 10501(b). Thus, in order for a rail carrier to succeed on its claim that the ICCTA preempts a state or local ordinance, the carrier must first show that its activities constitute "transportation by [a] rail carrier[ ]" such that they are subject to the ICCTA. See, e.g. , Island Park, LLC v. CSX Transp. , 559 F.3d 96, 103 (2d Cir. 2009) ; see also New York Susquehanna & W. Ry. Corp. v. Jackson , 500 F.3d 238, 247 (3d Cir. 2007) ("The first question to which we turn is whether the activities at issue are 'transportation by rail carrier,' and thus subject to the [ICCTA].").
In granting judgment and a permanent injunction on the basis of ICCTA preemption, the district court's December 7, 2017 order necessarily had to find that the Railway's activities constituted "transportation by [a] rail carrier[ ]." Thus, the district court's statement that it had "already determined [in its June 29, 2016 order] that the activities conducted at the facility constitute transportation by a rail carrier" merely reflects that the district court was incorporating by reference its previous legal conclusion into its December 7, 2017 order. In that regard, this case is very different from Shrader v. CSX Transp., Inc. , 70 F.3d 255 (2d Cir. 1995), in which we held that we lacked jurisdiction to review a prior order - not referenced in the notice of appeal - when that prior order disposed of a different claim and was only mentioned in the operative order to provide the procedural history of the case. Id . at 256. Here, by contrast, the finding that the Railway's activities constituted transportation by a rail carrier was a necessary first step to exercising jurisdiction and enjoining enforcement of the Storage Ordinance. The fact that the Town did not appeal the June 29, 2016 order - and its finding that the Railway's activities constituted transportation by a rail carrier under the ICCTA - cannot insulate the December 7 order's implicit adoption of that finding from appellate review, any more than converting a preliminary injunction to a permanent injunction bars review of any reasoning adopted, but not articulated anew, by the order granting a permanent injunction. Cf. All. for Open Soc'y Int'l, Inc. v. United States Agency for Int'l Dev. , 911 F.3d 104 (2d Cir. 2018) (affirming permanent injunction where the underlying district court order converting the preliminary injunction to a permanent injunction merely reiterated its previous findings as to irreparable harm and success on the merits).
B.
Equally unpersuasive is the majority's alternative conclusion that, even if the December 7, 2017 order adequately ruled on the transportation-by-rail-carrier question, the Town was nonetheless "barred from attempting to relitigate [this] question" at all because it "failed timely to appeal" the August 21, 2017 partial final judgment.
The August 21, 2017 partial final judgment relied on by the majority "finalized" an injunction that barred the Town from enforcing a different, pre-construction ordinance. That ordinance required the Railway to submit its construction plans to the Town for approval before commencing construction on its contemplated storage facility. But by the time the partial final order was issued on August 21, 2017, the storage facility was already constructed . Therefore, an appeal of the partial final judgment would have been pointless, since even vacatur of the injunction would not have enabled the Town to enforce its pre-construction ordinance against a facility that was already built. Put differently, by the time the storage facility was completed in *91 June 2017, there was no justiciable controversy between the Town and the Railway that could be remedied by appellate review, as "it is axiomatic that there must be a continuing controversy capable of redress by this Court." Haley v. Pataki , 60 F.3d 137, 141 (2d Cir. 1995). Indeed, if the Town had attempted to appeal the August 21, 2017 partial final judgment, I expect we would have promptly dismissed it on the grounds of mootness. See, e.g., Honig v. Students of the Cal. Sch. for the Blind , 471 U.S. 148, 149, 105 S.Ct. 1820, 85 L.Ed.2d 114 (1985) (per curiam) (holding appeal moot when tests ordered by preliminary injunction had already been carried out). Remarkably, the majority chastises the Town for not bringing such a frivolous appeal - solely to preserve its ability to challenge the district court's transportation-by-rail-carrier ruling in the event of a possible future appeal of a yet-to-be-issued injunction on a different ordinance. I am aware of no precedent that requires such wasteful litigation, and I fear that such an illogical ruling would spawn appeals of virtually every preliminary injunction in this Circuit simply because risk-averse litigants would wish to avoid accusations of waiver in the event of future unfavorable rulings by the district court. For these reasons, I dissent from the conclusion that, having failed to appeal the partial final judgment, the Town forfeited its right to appeal the district court's transportation-by-rail-carrier ruling.
C.
What the majority conclusorily acknowledges in footnote four - that it would affirm the district court's transportation-by-rail-carrier ruling anyway - is correct, and the ground on which I would affirm the district court's finding.
The Railway's facility is a transloading center designed "for unloading bulk salt arriving by rail for local distribution by truck and for temporary storage in sheds pending distribution." In other words, as the majority puts it, the facility "stockpile[s] sodium chloride ... over the summer months for distribution as needed during the winter." The ICCTA defines "transportation" to include "a locomotive, car, vehicle, vessel, warehouse ... yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail." 49 U.S.C. § 10102(9). In accord with the statute's definition, this Circuit's precedent leaves no doubt that a transloading facility used for the storage of property constitutes "transportation." See Green Mountain R.R. Corp. v. Vermont , 404 F.3d 638, 642 (2d Cir. 2005) ("Certainly, the plain language [of the ICCTA] grants the [STB] wide authority over the transloading and storage facilities."). Accordingly, the Railway's road salt warehouse falls under the definition of "transportation" covered by the ICCTA.
Nor can there be any dispute that the Railway qualifies as a "rail carrier" under the statute. The ICCTA defines "rail carrier" to mean "a person providing common carrier railroad transportation for compensation ...." 49 U.S.C. § 10102(5). One distinctive feature of a common carrier is that it "undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant," N.Y. Susquehanna , 500 F.3d at 250, whereas a private carrier "offers services to limited customers under limited circumstances and assumes no obligation to serve the public at large," id . at 251. The Railway publicly advertised the rate it charged for intermodal shipments, "which indicates that it holds itself out to the public" as able and willing to ship goods for all comers. Id . Additionally, although the Town argued that the Railway only built the *92 facility to aid in the transportation of one commodity - salt - evidence in the record suggests that in fact the Railway planned to "occasionally transport other goods, such as lumber ... [and] windmill blades." Such evidence works against the Town's contention that the facility was only built to store road salt provided by Cargill. Accordingly, the Railway's activities plainly constitute "transportation by [a] rail carrier[ ]" under the ICCTA, and I would affirm the district court in finding so.
III. CONCLUSION
Although I disagree with the majority's waiver finding in Part II, this is ultimately an intramural dispute since we all agree that the Storage Ordinance does not fall within the police powers exception to ICCTA preemption. Accordingly, I would affirm the judgment of the district court in all respects, including that the Railway's activities constitute transportation by a rail carrier.